J-S03011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KRISTA NICOLE MADER | : | |
| | : | |
| Appellant | : | No. 892 WDA 2021 |

Appeal from the PCRA Order Entered June 24, 2021
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0000909-2016

BEFORE: LAZARUS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.: **FILED: May 17, 2022**

Krista Nicole Mader appeals from the order, entered in the Court of Common Pleas of Cambria County, denying her petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we affirm.

Mader was charged[1] with several drug-related offenses, including eleven counts of delivery of a controlled substance (Counts 3-13),[2] two counts of corrupt organizations (Counts 15-16),[3] and one count each of possession with

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The criminal complaint originally charged Mader with twelve counts of delivery of a controlled substance.

[2] 35 P.S. § 780-113(a)(30).

[3] 18 Pa.C.S.A. § 911(b)(3).

intent to deliver (PWID) (Count 1),[4] criminal conspiracy (Count 2),[5] dealing in the proceeds of unlawful activity (Count 14),[6] and criminal use of a communication facility (Count 17).[7] The charges stemmed from Mader's involvement in a heroin-distribution ring operated out of Johnstown and Pittsburgh. From September 2015 through March 2016, the Pennsylvania Office of the Attorney General collaborated with federal and local law enforcement to investigate the drug ring. Investigators intercepted phone calls, used confidential informants (CI), pen-register devices, and visual surveillance, and conducted controlled drug buys, nine of which involved Mader.

The investigation led law enforcement to believe that Mader, a college graduate then in her twenties, was a primary distributer/seller of heroin in Johnstown from September 2015 until January 2016. In particular, one of Mader's co-defendants, Curtis Harper, would direct heroin customers from Pittsburgh to Mader's Johnstown residence, and then Mader would deliver the heroin to other co-defendants as well as CIs. Agent Thomas J. Moore testified that during the four months he was actively working with the ring, Mader sold

---

[4] 35 P.S. § 780-113(a)(30).

[5] 18 Pa.C.S.A. § 903.

[6] *Id.* at § 5111(a)(1).

[7] *Id.* at § 7512(a).

172 bags of heroin, totaling an approximate weight of 3.2 grams.[8]   N.T. Sentencing, 11/16/17, at 17.  Prior to being charged, Mader cooperated with the Attorney General's Office and testified before an investigating grand jury, providing information about the drug ring and, in the process, incriminating herself.

In the fall of 2016, Mader's first attorney, Russell Heiple, Esquire, informed Mader that the Commonwealth had offered her a plea of 5-10 years' incarceration; Mader refused the offer.  At a pre-trial omnibus motion hearing where Mader was represented by Jerome Kaharick, Esquire,[9] Mader acknowledged that the Commonwealth had made her a 5-10-year-sentence plea offer, which would expire after that day.  N.T. Pre-Trial Motion Hearing, 7/7/17, at 5.  Mader rejected the offer.  *Id.*  When Attorney Kaharick asked Mader if she would agree to enter a plea if the Commonwealth offered her a 3-6-year deal, Mader stated, "I guess . . . yes."  *Id.* at 6.  However, the Commonwealth's attorney stated that because Mader's involvement in the drug ring was "significant[]," if would not offer less than 5-10 years.  *Id.* at 6-7.

_____

[8] Agent Moore also testified that, based on the total number of bags (120,750) sold over the entire 6-month span that he investigated the drug ring, approximately 2,245 grams of heroin were sold.  *Id.*

[9] Attorney Heiple was appointed to represent Mader on May 3, 2016.  On December 29, 2016, Attorney Heiple praeciped to withdraw as counsel.  On that same date, Attorney Kaharick praeciped to enter his appearance.  On January 3, 2017, Attorney Kaharick entered his appearance as Mader's counsel.

- 3 -

The Commonwealth's attorney then noted that the conspiracy and eleven drug delivery charges each carried a maximum 15-year penalty, while the illegal proceeds and corrupt organizations charges carried 20-year maximum penalties. *Id.* Finally, the communication facility charge carried a seven-year maximum sentence. *Id.* The Commonwealth also indicated that, if Mader were convicted, it would most likely seek consecutive sentences. *Id.* 7-8. Mader acknowledged, on the record, that she understood the maximum penalties to which she could be sentenced and, with that knowledge, still wished to proceed to trial. *Id.* at 8.

Mader was tried before a jury, with co-defendants Harper and Ryan Baumgardner, from September 18-22, 2017. The jury convicted Mader of all charges. Mader was sentenced on November 16, 2017, to an aggregate sentence of 18 to 40 years' imprisonment. On November 27, 2017, Mader filed a post-sentence motion to modify sentence, alleging her sentence was punitive and excessive compared to other co-defendants. At a hearing on the motion, Attorney Kaharick argued that proof of the amount of heroin that Mader allegedly helped distribute as part of a conspiracy was speculative and without foundation. N.T. Post-Sentence Motion Hearing, 11/11/18, at 3. On January 12, 2018, the court granted Mader's motion, in part, and modified her sentence as to Count 1 (PWID) only, changing her term of imprisonment to 12-168 months, for an aggregate sentence of 14-40 years' imprisonment and reducing her Recidivism Risk Reduction Incentive (RRRI) minimum total to less than 12 years. *See* Order, 1/12/18, at ¶¶ 1, 3; *see also* N.T. Post-

- 4 -

Sentence Motion Hearing, 11/11/18, at 6 (trial judge noting it wished to reduce Mader's overall sentence by 4 years).

Mader filed a timely direct appeal; our Court affirmed Mader's judgment of sentence. *See Commonwealth v. Mader*, 248 WDA 2018 (Pa. Super. filed Feb. 25, 2019) (judgment order finding Mader waived challenge to discretionary aspects of sentence claim where Commonwealth objected to Mader's failure to include Pa.R.A.P. 2119(f) statement in brief).[10]

On April 5, 2019, Mader filed a petition for allowance of appeal to the Pennsylvania Supreme Court; the Supreme Court denied the petition on September 6, 2019. On February 7, 2020, the trial court corrected a "patent sentencing error," *see* 42 Pa.C.S.A. § 5505, and amended Mader's sentences on Count 1 (PWID) and Count 2 (conspiracy) to 12-168 months' imprisonment on each count. Order, 2/7/20, at 1-2. The sentence at Count 2 was also ordered to run concurrently to Count 1. *Id.* at 2.

Mader filed a timely *pro se* PCRA petition.[11] The trial court entered a "Preliminary Post Conviction Order," granting Mader's petition to proceed *in*

---

[10] On direct appeal, Mader presented one issue for our Court's consideration, a discretionary aspects of sentence issue. Specifically, Mader alleged that her sentence—including offense gravity score and resulting guideline range—was incorrect as it was based on speculative evidence that she had delivered over 1,000 grams of heroin, when the evidence proved that she delivered less than 100 grams of heroin. *See Mader*, *supra* at *2.

[11] Although the trial court docket notes that Mader filed her *pro se* PCRA petition on August 12, 2020, it is unclear from the record on what date it was actually filed as the trial court states in its June 23, 2020 "Preliminary Post
*(Footnote Continued Next Page)*

*forma pauperis*, finding Mader to be indigent, and appointing David L. Breyer, Esquire, to represent Mader in PCRA proceedings. Preliminary Post Conviction Order, 6/23/20, at 1. On August 18, 2020, counsel filed an amended PCRA petition. The court held PCRA hearings on October 23, 2020 (via video), March 9, 2021, and April 26, 2021, at which Attorney Heiple, Attorney Kaharick, the prosecuting attorney, Deputy Attorney General Patrick Leonard, Mader's then-boyfriend, Ian Brooker, and Mader testified. On June 24, 2021, the court entered an order and accompanying opinion denying Mader's PCRA petition.

Mader filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[12]

In her brief, Mader presents the following issues for our consideration:

_____

Conviction Order" that "upon consideration of the Defendant's Petition for Post-Conviction Relief," is it ordering and directing counsel be appointed for Mader. Thus, we can infer that Mader timely filed her petition *prior to* June 23, 2020. However, because the time stamp on the petition and docket indicates Mader's *pro se* petition was filed on August 12, 2020, we will use that date when we cite to it throughout this memorandum.

[12] In her Rule 1925(b) statement, Mader raised the following three errors, alleging trial counsel was ineffective for: (1) advising her to go to trial after she willingly cooperated with the Commonwealth, voluntarily supplied evidence against her interest, and offered a full confession; (2) miscommunicating to her the application of the standard guideline ranges in relation to the gravity of the charges pending against her when advising her of the merit of proceeding to a trial; and (3) presenting a trial defense (that person convicted of her charges could only be held culpable for small portion of total weight when determining standard guideline range) that is refuted by case law. *See* Pa.R.A.P. 1925(b) Statement, 8/23/21.

(1)    Was trial counsel ineffective in allowing a favorable plea offer to expire without advising [Mader] of the benefits of that plea and the temporary status of the offer?

(2)    Was trial counsel ineffective in miscommunicating to [Mader] her applicable sentencing guideline ranges in relation to a plea versus a guilty verdict at trial?

Appellant's Brief, at 6.

Our standard of review from the denial of a PCRA petition "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Ousley**, 21 A.3d 1238, 1242 (Pa. Super. 2011) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." **Commonwealth v. Mitchell**, 105 A.3d 1257, 1265 (Pa. 2014) (citation omitted).

Both of Mader's issues on appeal allege trial counsel's ineffectiveness. We presume that the petitioner's trial counsel was effective. **Commonwealth v. Freeland**, 106 A.3d 768, 775 (Pa. Super. 2014). To be entitled to relief on a claim of ineffective assistance of counsel, a petitioner must establish that: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable basis for his action or inaction; and (3) but for the act or omission in question, the outcome of the proceedings would have been different (i.e., petitioner was prejudiced). **Commonwealth v. Washington**, 927 A.2d 586, 594 (Pa. 2007). "A claim of ineffectiveness may be denied by a showing that the petitioner's evidence fails to meet any of these prongs." **Id.** (citations

omitted). ***See also Commonwealth v. Turetsky***, 925 A.2d 876, 880 (Pa. Super. 2007) (citations omitted) (to establish ineffectiveness under PCRA, petitioner "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.").

With regard to Mader's first issue on appeal, we conclude that she has waived it for failing to include it in her Rule 1925(b) statement. ***See*** n.12, ***supra***; Pa.R.A.P. 1925(b)(4)(vii).

In her second issue, Mader contends that counsel was ineffective for improperly advising her "that her standard sentencing guideline range would be based off of 3.2 grams of heroin, rather than 1,000+ grams." Appellant's Brief, at 20.[13] ***See also*** *Pro Se* PCRA Petition, 8/12/20, at ¶ 1(A) (Question 15) (trial counsel "failed to comprehend, or emphasize the gravity of the [c]onspiracy charge alleging 1[,]000 grams against [Mader, and, therefore, counsel's] lack of professional competence caused him to underestimate the amount of controlled substance[s] involved in the charges, thus causing him to underestimate the sentence possibilities in a substantial manner"). Mader alleges that "[t]he vast disparity in the sentencing guidelines between [t]he two amounts [of drugs], plus the existing case[]law regarding individual

---

[13] Specifically, Mader asserts that counsel told her that if she were to proceed to trial, she could only be held accountable for the "3 grams that they actually had buys on me for[,]" rather than the thousands of grams she had confessed to helping to distribute as part of a criminal conspiracy." ***Id.*** at 13.

liability for criminal conspiracies, makes it impossible to argue that [counsel acted] . . . reasonably." Appellant's Brief, at 19-20.

In her *pro se* petition, Mader claimed that trial counsel "understated the possible sentenc[ing] consequences, and advised [her] against accepting what was an obviously exceptional plea bargain." *Pro Se* PCRA Petition, [8/12/20], at ¶ 4 (Question 6). However, trial counsel testified at the PCRA hearings that he unsuccessfully asked the Commonwealth's attorney "[o]n numerous occasions" if he could reduce the 5-10[-]year plea offer to 3-6 years. N.T. PCRA Hearing, 4/26/21, at 7, 10, 30. Attorney Kaharick also testified that he had talked to Mader "about a lesser plea deal *ad nauseam*." **Id.** at 12 (italics added), and that because Mader was having a baby, she was "adamant that she was not pleading guilty . . . because [s]he could not go to jail. . . . But she was definitely not going to plead." **Id.** at 11. Additionally, the prosecuting attorney testified that the trial judge repeatedly asked Mader if she was sure what the plea offer was, that she knew she was rejecting it, and that the rejection "was of her own free will." **Id.** at 24, 32-33. By contrast, Mader testified at the PCRA hearing that she was "adamant that [she] did not want to go to trial [because she] knew that [she] had confessed, and there was no purpose to go to trial. There was no way to defend or say that [she] didn't do what [she] had done." **Id.**, 10/23/20, at 8.

It is well-established that counsel has a duty to communicate to his client, not only the terms of a plea bargain offer, but also the relative merits

of the offer compared to the defendant's chances at trial. ***Commonwealth v. Napper***, 385 A.2d 521, 524 (Pa. Super. 1978).

> In order to prove ineffectiveness, a defendant who rejects a plea offer must show that, but for the ineffective advice of counsel, there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

***Lafler v. Cooper***, 566 U.S. 156, 164 (2012).

Attorney Kaharick testified that on the first day of trial he asked Mader if she wanted to plead guilty and that it was her "last chance to do this if [she] wish[ed] to." N.T. PCRA Hearing, 4/26/21, at 18. Counsel also testified that when the Commonwealth offered Mader the 5-10-year plea deal at her pre-trial hearing, he never told her to reject the deal in an effort to force her to go to trial. ***Id.*** at 29-30. Attorney Kaharick also testified he never told Mader that she could be sentenced based only on the small amount of heroin purchased during the controlled buys, and not the overall conspiracy, ***id.*** at 23, or that she could not be prosecuted for any drugs sold after January of 2016 when she was no longer involved in the ring. ***Id.*** 34.

While counsel did testify that, based upon discovery, "there was no way to anticipate thousands [of grams of heroin, but] . . . maybe they can get to 50 or 100 [grams]," ***id.*** at 24, Mader was also aware of her sentencing exposure from her discussions with prior counsel, Attorney Heiple, letters from the Commonwealth, and the July 2017 pretrial hearing where the plea offer

and her exposure were placed on the record. *See* Letter from Office of the Attorney General to Attorney Heiple, 8/19/16 (noting Mader's "sentencing guideline range for Counts I and II (PWID and Conspiracy) alone is 60-78 months based on offense gravity score of 13 (**over 1[,]000** grams of heroin and PRS of 0") (emphasis added); *Id.*, 11/18/16 (noting Mader had "apparent change of heart regarding her guilty plea," asking Attorney Heiple to "advise of Ms. Mader's intentions," and, finally, indicating "[plea] offer will be **withdrawn on December 1, 2016**") (emphasis added).

Based on the record, we cannot conclude that Mader has proven she was prejudiced by trial counsel's actions. Here, Mader did not claim that she was unaware of a plea offer. Rather, it is clear that she was aware that the Commonwealth had offered her a 5-10-year plea deal multiple times, she had discussed the deal with prior counsel, consistently rejected the offer (rejecting it at least one time even *after* she had given birth to her child) and was told, in open court, that the offer would expire on a given day. *See* N.T. PCRA Hearing, 10/23/20, at 41-43 (Mader's boyfriend, Booker, testifying that prior counsel had discussed plea deal with Mader multiple times). For this reason, Mader's claim fails. *See Washington*, *supra*.

Moreover, with regard to trial counsel's strategy, Mader has failed to show that Attorney Kaharick's strategic plan was unreasonable. Counsel testified that he tried to negotiate for a better plea offer, never promised Mader that he could obtain a better offer, and, in fact, got Mader to admit, in the presence of the prosecuting attorney, that she would accept a 3-6-year

- 11 -

plea deal.  Finally, Mader was informed, in open court, of the potential sentence exposures were she held accountable for the entire amount of drugs distributed as a result of the conspiracy.

Under the circumstances, the trial court properly denied Mader's PCRA petition where the court's determination is supported by record evidence and is free of legal error.  **Ousley**, **supra**.  Counsel cannot be deemed ineffective where he acknowledged he could not force Mader to accept a plea that she was adamant about rejecting, Mader was aware of her plea/trial options, and where Mader was fully informed of the possible penalties if she were to proceed to trial.  **Washington**, **supra**.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/17/2022